

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

January 12, 1959

General Ernest O. Thompson, Commissioner
Railroad Commission of Texas
Austin, Texas

Opinion No. WW-542

Re: Whether a company furnishing
natural gas to a farm house
for household use is a public
utility as defined in Article
6050, V.C.S. and related
questions.

Dear General Thompson:

This is in response to your letter of September 24, 1958, requesting a ruling from this office on the following:

(1) Does the language in Secs. 4 and 4a of Article 6050, V.C.S. (Acts 53rd Leg., 1st C.S. p. 70, Ch. 31, Sec. 1) except from the definition of Public Utilities set forth in the preceding portions of Article 6050 companies furnishing gas for household purposes to farmers?

(2) In the event a gas company should become a utility by reason of serving farm houses gas for heating and cooking purposes, but should not serve incorporated towns or villages, would it then be the duty of the Railroad Commission to regulate the rates on sales of gas made to farmers both for irrigation wells and for household use?

The definition of public utilities made subject to regulation by the Railroad Commission of Texas under Article 6050, V.C.S. (Acts 1920, 36th Leg., 3rd C.S., Ch. 14, Sec. 1) as originally passed, was sufficiently broad to include sales of gas to the public for domestic or other uses, whether agricultural or not. See Article 6050, Sec. 1, V.C.S.

In 1954, the Legislature added sections 4 and 4a to Article 6050, which are as follows:

"Sec. 4.   Provided, however, that the act or acts of transporting, delivering,  selling or otherwise making available natural gas for fuel, either directly or indirectly, to the owners of irrigation wells or the sale, transportation or delivery of natural gas for any other direct use in agricultural activities shall not be construed within the terms of this law as constituting any person, association, corporation, trustee, receiver or partnership as a 'gas utility,' 'public utility' or 'utility' as hereinabove defined so as to make such person, association, corporation, trustee, receiver or partnership subject to the jurisdiction, control and regulation of the Commission as a gas utility.  (Emphasis throughout is supplied.)

"Sec. 4a.  The natural gas made available under the provisions of this Act shall be used exclusively for pumping water for farm and other agricultural purposes in order for the person, association, or corporation furnishing such natural gas to be exempt from the provisions of said Article 6050 of the Revised Civil Statutes of Texas of 1925. The provisions of this act shall be considered only as cumulative of other laws and shall not have the effect of repealing or amending any substantive or statutory law except as herein specifically provided."  (Added acts 1954, 53rd Leg., 1st C.S., p. 70, Ch. 31, Sec. 1)

It has been suggested that because of the words "other agricultural purposes" contained in the above quoted sections of Article 6050 that the furnishing of gas for domestic purposes to farm houses might be considered as another agricultural purpose within the meaning of the exemption contained in the statute because of the fact that a farm house is usually an integral part of farming operations.

In our opinion, the use of the words "for any other direct use in agricultural activities", as contained in section 4, precludes such a construction of the statute. This language is preceded by a reference to the use of gas for irrigation purposes, a use that acts directly on a farming operation, the furnishing of water for the growing of crops. It is only reasonable to assume that the legislature intended to limit the exemption to uses that are comparable in their "directness",

such as fuel for stationary farm machinery, the use of gas for the dehydration of crops, and other like uses. See the discussion of the doctrine of ejusdem generis in 39 Tex. Jur. Statutes, Sec. 109, pp.202-204, which we deem applicable here.

There is no case law precisely in point. Compare Northwestern Casualty v. Barzune, 42 S.W.2d 100, 103 (err. dismissed 1931) in which the word "directly", as used in an insurance policy, was defined in its ordinary sense as meaning..."without anything intervening; not by secondary but by direct means." In the absence of something in the legislation indicating a contrary legislative purpose, words used by the legislature are ordinarily given their plain meaning. Tex. Jur. Statutes, Sec. 103, p. 195. The words "direct use" can only have been intended as a restriction on the exemption granted.

The exemption is therefore limited to a "direct use in agricultural activities." We cannot ignore these limiting words but must give meaning and effect to each and every phrase and word contained insofar as this can be done consistently with the object and purposes of the legislature. 39 Tex. Jur. Statutes, Section 112, p. 208.

We have examined the caption of the legislation and have found nothing that would indicate an intent to grant an exemption any broader than that specifically stated in the language of the act. Your first question is therefore answered in the negative.

In answering your second question, we are once again guided by the language contained in section 4 of Article 6050. Section 4 provides "...that the act or acts of transporting, delivering, selling or otherwise making available natural gas for fuel,... to the owners of irrigation wells....shall not be construed within the terms of this law as constituting any person, association, corporation, trustee, receiver or partnership as a 'gas utility,' 'public utility,' or 'utility' as hereinabove defined so as to make such person,...subject to the jurisdiction, control and regulation of the Commission as a gas utility."

Since it is the activity of furnishing gas for irrigation or other direct agricultural uses that is exempt from regulation, such activity would be exempt even if engaged in by a company which by reason of other activities might be classed as a public utility. Therefore, if a gas company should become a gas utility by reason of serving farm houses for heating and cooking purposes, but should not serve incorporated

towns or villages,[1] it would then be the duty of the Railroad Commission to regulate the rates on sales of gas made to farmers for domestic use. Sales for irrigation wells or for other direct agricultural uses would still remain exempt from regulation by theCommission.

We do not mean to imply, however, that the Commission could not or should not consider the economic aspects of the exempt activity when promulgating rates for an activity that is not exempt. We do not pass upon this question.

## SUMMARY

The exemption from public utility regulation provided for sales of gas to farmers for irrigation fuel and other direct use in agricultural activities provided in Secs. 4 and 4a of Art. 6050 V.C.S. does not extend to sales made to farmers for domestic use.

The activity of furnishing gas for irrigation or for other direct use in agricultural activities would remain exempt from regulation under Article 6050 V.C.S. even if a company engaged in such activities should become a public utility by virtue of furnishing gas for domestic use to farmers.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Houghton Brownlee, Jr.
Assistant

HB/gr

APPROVED:
OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

Milton Richardson
Jack Goodman
Dean Davis
John Webster

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert

---

1. See Articles 1119, et seq. V.C.S. conferring powers on certain cities and towns to prescribe rates under the conditions there outlined.